**Ex parte Gary GRAHAM.**

**No. 17568–03.**

Court of Criminal Appeals of Texas, En Banc.

June 2, 1993.

Order July 5, 1993.

**566**

Michael E. Tigar, Austin, Richard Burr, New York City, Anthony S. Haughton, Robert C. Owen and Mandy Welch, Houston, for applicant.

John B. Holmes, Jr., Dist. Atty., Roe Wilson, Asst. Dist. Atty., Houston, Robert S. Walt, Asst. Atty. Gen. and Robert Huttash, State's Atty., Austin, for the State.

## ORDER

MEYERS, Judge.

On our own motion and pursuant to rule 213(b) of the Texas Rules of Appellate Procedure, this day we reconsider, in part, our original ruling in *Ex parte Graham*, 853 S.W.2d 564 (Tex.Crim.App.1993).

On October 28, 1981, applicant was convicted of the offense of capital murder. After the jury returned affirmative answers to the special issues submitted under Article 37.071 of the Texas Code of Criminal Procedure, punishment was assessed at death. This Court affirmed applicant's conviction on direct appeal. *Graham v. State*, No. 68,916 (Tex.Crim.App. June 12, 1984) (unpublished). On April 27, 1993, this Court denied applicant relief in a habeas corpus petition which contained issues similar to those presented today. *Ex parte Graham*, 853 S.W.2d 564 (Tex.Crim.App. 1993). The trial court has scheduled appli-

cant's execution to be carried out on or before sunrise, June 3, 1993.

In the instant cause, applicant filed a motion requesting this Court reconsider, our initial denial of relief. *See* Tex.R.App. Proc. 213(b). Applicant presents four grounds for reconsideration. In his first ground, applicant requests a stay of execution pending the resolution of *Johnson v. Texas*, No. 92–5653 (U.S.Sup.Ct., pending). Secondly, applicant requests this Court file and set his petition to determine the trial court's reliance on *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) (plurality opinion) and *Ex parte Acosta*, 672 S.W.2d 470 (Tex. Crim.App.1984). Applicant's third and fourth grounds for reconsideration in his petition concern constitutional protections against the execution of an "innocent person." Upon due consideration, we refuse to consider the merits of applicant's second, third and fourth grounds for reconsideration. *See Ex parte Graham*, 853 S.W.2d 564 (Tex.Crim.App.1993). However, on our motion and for reasons which will become apparent, applicant's execution is stayed. *See* Tex.R.App.Proc. 213(b).

This petition represents the worst-case scenario—the possibility that a person might be unconstitutionally punished by the legal system. That is, applicant could be put to death tomorrow for something which is, within thirty days, determined to be unconstitutional. With this much at stake, the State will wait thirty days.

In *Graham v. Collins*, the Supreme Court refused to decide the question of youth as a mitigating factor because, to do so would necessarily create a new rule which is not cognizable under federal habeas law. *Graham*, —— U.S. ——, ——, 113 S.Ct. 892, 903, 122 L.Ed.2d 260 (1993). Soon, the Supreme Court will squarely decide this question in *Johnson v. Texas*, but any relief accorded to Johnson will be provided only for litigants on direct review to the Supreme Court and not the applicants in federal habeas corpus petitions. Our position on the constitutionality of this issue has been clear. The question of youth as a mitigating factor can be considered in a constitutional manner within the scope of our special issues. *Delk v. State*, 855 S.W.2d 700 (Tex.Crim.App.1993); *Ex parte Kunkle*, 852 S.W.2d 499 (Tex.Crim.App. Feb. 3, 1993); *Nelson v. State*, 848 S.W.2d

126 (Tex.Crim.App.1992). However, if the Supreme Court finds we have erred in our constitutional analysis, and Johnson was unconstitutionally sentenced due to the Texas system's failure to allow juries to consider youth as a mitigating factor, then not only will Johnson be entitled to relief but, *possibly*, so too will Graham. The question of Graham's youth might be cognizable under our State habeas corpus jurisprudence as a right not previously recognized under *Ex parte Chambers*, 688 S.W.2d 483 (Tex.Crim.App.1984) (Campbell, J. concurring, joined by PJ. McCormick, and JJ. Davis, Clinton, Teague and Miller). Accordingly, applicant's execution is stayed for 30 days pending the resolution of *Johnson v. Texas* by the United States Supreme Court.

IT IS SO ORDERED.

MALONEY, Judge, concurring and dissenting.

This case is before us on a motion to stay issuance of the death mandate and to reconsider on our own motion our order of April 27, 1993, denying relief on applicant's postconviction writ of habeas corpus under TEX.CODE CRIM.PROC.ANN. art. 11.07. At the outset it should be noted that the trial judge in making findings did not conduct an evidentiary hearing, but alternatively rendered his findings on the basis of affidavits as he was authorized to do under TEX. CODE CRIM.PROC.ANN. art. 11.07. By order entered today, this Court has granted a stay of the mandate pending further orders of this Court to which action I concur; but has refused to grant further relief to which refusal I dissent.

In *Herrera v. Collins*, —— U.S. ——, ——, 113 S.Ct. 853, 869, 122 L.Ed.2d 203 (1993), the United States Supreme Court recognized, albeit arguendo, that there may be cases in which the applicant's showing of actual innocence is sufficiently high to entitle him to relief under the Eighth Amendment:

> We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, *the threshold showing for such an assumed right would necessarily be extraordinarily high.*[1]

*Id* (emphasis added).

As to capital cases where newly discovered evidence is presented in support of a claim of actual innocence, this Court should establish a threshold standard to be applied by us in reviewing such a claim. In my opinion, the threshold question should be whether the newly discovered evidence, if true, would create a doubt as to the efficacy of the verdict to the extent that it undermines our confidence in the verdict and that it is probable that the verdict would be different. Once this threshold question of actual innocence is satisfactorily answered, due process demands the attention of a forum for further consideration of the evidence.

As applicant points out, the three mechanisms conceivably available under Texas law for addressing such a claim fail. A motion for new trial based upon newly discovered evidence is not available more than thirty days after conviction. *See* TEX. R.APP.P. 31. Further, this Court has previously held that newly discovered evidence is not cognizable in an application for postconviction writ of habeas corpus. *Ex parte Binder*, 660 S.W.2d 103, 105–106 (Tex. Crim.App.1983).[2] Finally, the process of

---

1. As pointed out by applicant, six members of the Supreme Court recognized in their various opinions in *Herrera* that execution of an innocent person would violate the federal constitution. *Herrera*, —— U.S. at ——, 113 S.Ct. at 853; *id.* at ——, 113 S.Ct. at 869 (O'Connor and Kennedy, JJ., concurring); *id.* at ——, 113 S.Ct. at 875 (White, J., concurring); *id.* at ——, 113 S.Ct.

at 876 (Blackmun, J., joined by Stevens and Souter, JJ., dissenting).

2. I note that *Binder* is not a capital case and that we are here today concerned only with capital cases where the death penalty has been assessed.

seeking executive clemency is inadequate for testing the credibility of newly discovered evidence of innocence due to the lack of formal procedures controlling its use. See TEX. CONST. art. IV, § 11; 37 TEX.ADMIN.CODE §§ 143.41, 143.43, 143.51, 143.57 et seq.

Although the United States Supreme Court has suggested that executive clemency provides an adequate forum for claims of actual innocence, Justice Blackmun, joined by Justices Stevens and Souter, have recognized the fallacies in that contention:

## III

The Eighth and Fourteenth Amendments, of course, are binding on the States, and one would normally expect the States to adopt procedures to consider claims of actual innocence based on newly discovered evidence. See *Ford v. Wainwright,* 477 U.S. [399] at 411–417 [106 S.Ct. 2595, 2602–06, 91 L.Ed.2d 335 (1986)] (plurality opinion) (minimum requirements for state-court proceeding to determine competency to be executed). The majority's disposition of this case, however, leaves the States uncertain of their constitutional obligations.

### A

Whatever procedures a State might adopt to hear actual innocence claims, one thing is certain: The possibility of executive clemency is *not* sufficient to satisfy the requirements of the Eighth and Fourteenth Amendments. The majority correctly points out: "A pardon is an act of grace." *Ante,* at 22 [113 S.Ct., at 867]. The vindication of rights guaranteed by the Constitution has never been made to turn on the unreviewable discretion of an executive official or administrative tribunal. Indeed, in *Ford v. Wainwright,* we explicitly rejected the argument that executive clemency was adequate to vindicate the Eighth Amendment right not be executed if one is insane. 477 U.S., at 416 [106 S.Ct. at 2605]. The possibility of executive clemency "exists in every case in which a defendant challenges his sentence under the Eighth Amendment. Recognition of such a bare possibility would make judicial review under the Eighth Amendment meaningless." *Solem v. Helm,* 463 U.S. 277, 303 [103 S.Ct. 3001, 3016, 77 L.Ed.2d 637] (1983).

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison,* 1 Cranch 137, 163 [2 L.Ed. 60] (1803). If the exercise of a legal right turns on "an act of grace," then we no longer live under a government of laws. "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 638 [63 S.Ct. 1178, 1185, 87 L.Ed. 1628] (1943). It is understandable, therefore, that the majority does not say that the vindication of petitioner's constitutional rights may be left to executive clemency.

### B

Like other constitutional claims, Eighth and Fourteenth Amendment claims of actual innocence advanced on behalf of a state prisoner can and should be heard in state court. If a State provides a judicial procedure for raising such claims the prisoner may be required to exhaust that procedure before taking his claim of actual innocence to federal court. See 28 U.S.C. 2254(b) and (c). Furthermore, state-court determinations of factual issues relating to the claim would be entitled to a presumption of correctness in any subsequent federal habeas proceedings. See 28 U.S.C. § 2254(d).

Texas provides no judicial procedure for hearing petitioner's claim of actual innocence and his habeas petition was properly filed in district court under 28 U.S.C. § 2254. The district court is enti-

tled to dismiss the petition summarily only if "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." 28 U.S.C. § 2254 Rule 4. If, as is the case here, the petition raises factual questions and the State has failed to provide a full and fair hearing, the district court is required to hold an evidentiary hearing. *Townsend v. Sain,* 372 U.S. [293] at 313 [83 S.Ct. 745, 757, 9 L.Ed.2d 770] [ (1963) ].

As stated in the above dissent, Texas does not utilize a judicial forum for addressing claims of actual innocence based upon newly discovered evidence. However, because such a claim ultimately turns upon the credibility of witnesses and further development of the facts, it needs to be evaluated in an adversary setting before a judicial trier of fact and law. It is only in this setting that credibility can be determined.

In *Herrera,* the Supreme Court stated that Herrera's newly discovered evidence was insufficient to meet the "extraordinarily high" threshold showing required to entitle him to relief. The Supreme Court criticized Herrera's evidence because, presented in the form of affidavits, all but one of the affidavits attested to Herrera's innocence on the basis of hearsay, which the Supreme Court noted rendered them "particularly suspect"; "[n]o satisfactory answer had been given as to why the affiants waited until the 11th hour—and, indeed, until after the alleged perpetrator of the murders himself was dead—to make their statements"; Herrera had not given an explanation as to why he, as an innocent man, plead guilty; the affidavits gave inconsistent factual accounts, and the evidence at trial included two eye witness identifications, numerous pieces of circumstantial evidence, and a handwritten letter in which Herrera apologized for committing the offense and offered to turn himself in.

In his writ application, applicant here presents the sworn affidavits of four persons, attesting that they were with applicant at a gathering of family and neighbors on the night of the offense, and at the hour at which the offense was committed. None of the affidavits presented by applicant are based upon hearsay evidence. The affida-

vits are factually consistent with one another. Applicant also presented the sworn statement of Merv West, the trial investigator for the defense in applicant's case, who admitted that applicant had given his defense attorney the names of alibi witnesses, but that he did not talk to any of them in his investigation. West explained that "[s]ince we both [West and applicant's defense attorney] assumed [applicant] was guilty, I decided not to waste time trying to substantiate his alibi." West's account explains the absence of the alibi witnesses from the trial. In addition there are affidavits from people who were at the scene and who state that applicant is not the assailant. Applicant plead not guilty to the offense and he has not made incriminating statements. Applicant's conviction turned upon his identification by a single witness. There was no physical evidence linking applicant to the scene. The strength and consistency of the affidavits, if true, in light of the State's evidence at trial, amount to a sufficiently high threshold showing of actual innocence to entitle applicant to a hearing to determine the credibility of the newly discovered evidence. *See Herrera.*

Where an arguably innocent person, wrongly convicted and sentenced to death, is wholly without a meaningful forum in which to present newly discovered evidence in support of his claims of actual innocence, this Court should be compelled, as a matter of public policy, to provide sufficient safeguards to ensure that state and federal constitutional protections are given effect. *See Gonzales v. State,* 818 S.W.2d 756, 765 (Tex.Crim.App.1991).

I would hold that in a case where the death penalty has been assessed and the "threshold question" stated in *Herrera* has been met by an applicant presenting affidavits to this Court, we should order the trial court to conduct a hearing to determine the credibility of such newly discovered evidence, considering any other evidence the trial court might deem helpful in its determination of credibility, including that evidence offered during the trial. The trial court should render findings of fact to be forwarded to this Court for a determination as to whether we should order a new trial.

Such action is authorized under our constitutional authority to issue such writs as we deem necessary. TEX.CONST. art. V, § 5; TEX.CODE CRIM.PROC.ANN. art. 11.02.

I concur in the granting of the stay of execution; but I dissent to the majority's failure to remand this cause to the trial court with instructions to conduct an evidentiary hearing to determine the credibility of the newly discovered evidence contained in the affidavits and to forward its findings of fact to this Court for final determination.[3]

BAIRD and OVERSTREET, JJ., join.

CLINTON, Judge, concurring.

Recognizing and acknowledging that the Court is being prudently cautious in granting a stay of execution, albeit for the limited purpose of awaiting the resolution of *Johnson v. Texas,* I would extend the stay to reconsider our prior disposition of two grounds previously advanced by applicant, viz: ground 1 in his "02" application alleging ineffective assistance of counsel by failing to develop or present evidence in his defense, or to submit the prosecution's evidence to any meaningful adversarial testing at trial, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States, and in violation of Article I, § 10 of the Constitution of the State of Texas; ground 3 in his "03" application to the effect that this Court should decide "what procedures are necessary to enforce the existing Federal constitutional prohibition on executing the innocent." Neither ground was presented on direct appeal, and manifestly each is of serious significant import—certainly to this applicant as well as others similarly situated.

Judge Maloney considers one aspect of the latter ground in his separate opinion only to find "the process of seeking executive clemency is inadequate for testing the credibility of newly discovered evidence of innocence due to the lack of formal procedures controlling its use." Opinion, at 568,

and see at 569. In my judgment, such a conclusion is not yet clearly supported by the record before us or by "legislative facts" and matters which we may judicially notice.

Moreover, the Board of Pardons and Paroles is a creature of the Constitution, empowered to recommend and advise the Governor as to granting commutations of punishment and pardons, Article IV, § 11, and has itself adopted and promulgated rules of administrative procedure to those same ends. See 37 Texas Administrative Code, Chapter 143, § 143.1 et seq. and Chapter 147, § 147.1 et seq. Should it appear that upon proper application the Board has failed or refused to put its own procedures to work in this cause or, Judge Maloney believes, they are "inadequate" for the task, then it seems to me this Court is duty bound to file and set the cause for determination of the issues thus presented.

The Executive Department is constitutionally required to adopt and follow rules that comport with due process and due course of law. Now that the Supreme Court of the United States has spoken in *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), concerning the role of the executive clemency in providing a forum for testing claims of "actual innocence," this Court has the power, duty and responsibility to assure that due process and due course requirements are met.

Although I agree with the stated reason for granting a stay of execution, we should enlarge the grant to encompass those grounds identified above. Because the Court does not act to insist that an agency of our government comport with fundamental constitutional expectations, I respectfully concur only with result.

Before the court en banc.

## ORDER

PER CURIAM.

This is an application for a writ of habeas corpus transmitted to this Court pursuant to Article 11.07, § 2, *et seq.,* V.A.C.C.P.

---

**3.** I also dissent to the Court's failure to disavow, as applicant urges, any implication in our Order, dated April 27, 1993, that we are bound by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). In making its findings of fact and conclusions of law on applicant's writ, the trial court asserted that applicant sought "the announcement and application of a new rule", citing *Teague,* and the court declined to apply such a new rule. The rule announced in *Teague* regarding the retrospective application of new laws is only applicable to federal writs of habeas corpus and this Court should clarify any misconception to the contrary.

On October 28, 1981, Applicant was convicted of capital murder. After the jury returned affirmative answers to the special issues submitted under Article 37.071, V.A.C.C.P., punishment was assessed at death. *Graham v. State,* No. 68,916 (Tex. Cr.App. delivered June 12, 1984). On April 27, 1993, this Court denied his application for a writ of habeas corpus with written order. *Ex parte Graham,* 853 S.W.2d 564 (Tex.Cr.App.1993). Applicant filed a motion requesting reconsideration of our denial. On our own motion we reconsidered our ruling, in part, and refused to consider the merits of all but one of the grounds, that one ground implicating *Johnson v. Texas,* —— U.S. ——, 113 S.Ct. 2658, —— L.Ed.2d —— (1993). We ordered Applicant's execution stayed for thirty days. *Ex parte Graham,* 853 S.W.2d 565 (Tex.Cr. App.1993).

The State has now filed a Motion for Dissolution of the Stay. However, it should be noted that our stay of execution dated June 2, 1993 has expired by its own terms. Thus, the State's motion is dismissed as moot due to the expiration of our earlier order of June 2, 1993.

Applicant has filed a Motion to Continue the Stay of Execution and for Remand for Evidentiary Hearing on Claim of Ineffective Assistance of Counsel in which claims of ineffectiveness of counsel are made.[1]

■ With regard to Applicant's motion it is noted that we have no allegation of ineffectiveness of counsel properly pending before us. Such must be presented to the trial court first and transmitted to this Court pursuant to Art. 11.07, *supra.* Article 11.07 provides the exclusive remedy for final felony convictions in Texas. *Ex parte Adams,* 768 S.W.2d 281 (Tex.Cr.App.1989). That article requires all claims to first be presented to the trial court and, following a fact finding procedure conducted in that court, to be transferred to this Court. Since Applicant has failed to present these claims to the trial court, they are not properly before us at this time. Accordingly, we will dismiss Applicant's Motion to Continue Stay and Remand For an Evidentiary Hearing without prejudice to file the claim in the appropriate court.

Applicant's Motion is, therefore, dismissed without prejudice to file his application in the trial court pursuant to Art. 11.07, § 2, *et seq., supra.* The State's Motion for Dissolution of the Stay is dismissed as moot.

---

1. It is noted that Applicant alleged ineffective assistance of counsel in an earlier writ application, an evidentiary hearing was held and this Court denied relief based on the findings of fact and conclusions of law developed as a result of that hearing, at which hearing counsel testified. *Ex parte Graham* (Tex.Cr.App. No. 17,568–01, delivered February 19, 1988). However, Applicant contends that newly discovered or available evidence relating to counsel's effectiveness casts doubt on the efficacy of the fact finding process conducted at that time. We express no opinion at this time on Applicant's contentions given that the trial court is the appropriate forum for the gathering and presentation of factual matters under Article 11.07.