**The STATE of Texas, ex rel. John B. HOLMES, Jr. District Attorney of Harris County, Texas, Relator,**

**v.**

**THIRD COURT OF APPEALS OF TEXAS, Respondent.**

**TEXAS BOARD OF PARDONS AND PAROLES, et al., Relators,**

**v.**

**THIRD COURT OF APPEALS OF TEXAS, Respondent.**

**Nos. 25,214-01, 25,215-01.**

Court of Criminal Appeals of Texas, En Banc.

Aug. 16, 1993.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann and Roe Wilson, Asst. Dist. Attys., Houston, for relators in No. 25,214-01.

Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary L. Keller, Deputy Atty. Gen., Michael P. Hodge, Ann Kraatz, William C. Zapalac and Robert S. Walt, Asst. Attys. Gen., Austin, for relators in No. 25,-215-01.

James C. Harrington, Maria–Elena Cigarroa, Brad Rockwell, Harley Clark, Austin, Richard Burr, Elaine Jones, New York City, for real party in interest Gary Graham.

CLINTON, Judge, concurring.

Recently, the Supreme Court of the United States confirmed that in Texas, as elsewhere, executive clemency is "the 'fail-safe' in our criminal justice system"—"the historic *remedy for preventing miscarriages of justice* where judicial process has been exhausted." *Herrera v. Collins,* —— U.S. ——, at ——, ——, 113 S.Ct. 853, at 866, 868, 122 L.Ed.2d 203 (1993).[1] Today, however, the district attorney of Harris County and the executive department, board and officials, alone authorized to advise and recommend to the Governor whether to exercise her clemency powers and thereby implement the historic "fail-safe" remedy, importune this Court to rescue them from judicial orders relating to discharging their constitutional duties and responsibilities in the premises. See Article IV, § 11, Constitution of the State of Texas.

I

A

Gary Graham was convicted of capital murder in Harris County; this Court affirmed the judgment. *Graham v. State,* 671 S.W.2d 529 (Tex.Cr.App.1984). Thereafter Graham invoked and pursued available judicial remedies to the Supreme Court and back again.

Thereafter, this Court expressly refused "to reconsider the merits of [certain]

1. All emphasis is supplied throughout by this writer unless otherwise indicated.

grounds" advanced by Graham as to "what procedures are necessary to enforce the existing Federal constitutional prohibition on executing the innocent." *Ex parte Graham*, 853 S.W.2d 565 (Tex.Cr.App.1993). Finally we denied without prejudice his motion to continue stay of execution and to remand for hearing on his claim of ineffective assistance of counsel during trial. *Ex parte Gary Graham*, 853 S.W.2d 565, 571 (1993). Thereafter, on July 7, 1993, the judge of the convicting court ordered that the sentence of death be carried out at some hour before sunrise of August 17, 1993; the judge further directed the clerk of court to issue and deliver to the Sheriff of Harris County a death warrant, and in turn that the Sheriff deliver the warrant to the Director of the Institutional Division of the Texas Department of Justice.

## B

On July 21, 1993, Graham filed a *civil* action in a district court of Travis County, *viz:* Gary Graham v. Texas Board of Pardons and Paroles, et al. After a July 27th hearing, on finding that Defendants "intend to refuse to grant Plaintiff [Gary Graham] a due course of law hearing on his post-conviction claim of innocence or to stay or to recommend to the Governor a stay of Plaintiff's execution, pending a due course of law hearing, as required by the Texas Constitution (Article I, sections 13 and 19 and Article IV, section 11), and thereby intend to allow the execution of Plaintiff to occur on August 17, 1993, before the Court can render judgment in this cause ... and thereby alter the status quo and wholly make not only ineffectual, but impossible, a judgment in favor of Plaintiff ... and that, unless Defendants ... are deterred, restrained and enjoined from carrying out that intention, Plaintiff will be completely without any remedy at all and will suffer death," the 299th Judicial District Court of Travis Court ordered and commanded Defendants forthwith "to grant Plaintiff a due course of law hearing on his post-conviction claim of innocence consistent with [cited constitutional provisions] on or before August 10, 1993, or, failing that, they are commanded to reschedule such execution until a hearing consistent with [cited constitutional provisions] is held on Plaintiff's post-judgment evidence of his claim of innocence or until judgment in this cause is entered by this Court." Temporary Injunction at 1–2, granted August 9, 1993.

Defendants wholly failed to comply with any command in such order, presumably on advice of counsel of record. Instead, on the day designated for their initial action the Attorney General of Texas gave notice of appeal to the Court of Appeals for the Third District. His recitation therein that Defendants are exempt from filing a cost bond served automatically to supersede the temporary injunction granted by the trial court. Tex.R.App.Pro 43(a).

On August 13, 1993, however, on motion by Graham the Court of Appeals exercised its authority to "issue such temporary orders as it finds necessary to preserve the rights of the parties until disposition of the appeal" taken by the Attorney General. Tex.R.App. Pro. 43(c). It granted a temporary injunction prohibiting the State officials and their agents from executing Graham until final disposition of the appeal from the order of temporary injunction rendered by the trial court.

The District Attorney of Harris County now moves this Court for leave to file a petition for writ of mandamus directed to the Court of Appeals and a request for emergency stay of the temporary injunction pursuant to Tex.R.App.Pro. 121(d), seeking to have this Court overturn the orders of the Court of Appeals to the end that the execution of Graham proceed as scheduled—without according him the due course of law hearing ordered by the court below. The Attorney General of Texas similarly moves for leave to file applications for writ of prohibition and mandamus to vacate the temporary injunction and to prohibit the Court of Appeals from taking any further action in the cause except to dismiss it upon notice that the district court has dismissed the cause pursuant to a holding of this Court; yet, to assume original habeas jurisdiction to address the very clemency issues raised by Graham and thus far decided in his favor.

## II

As matters now stand the *judicial* process in his *criminal* capital murder case has been exhausted. Graham is scheduled for execution at an early hour of Tuesday, August 17. But in a *civil* case the Court of Appeals has granted and issued a temporary injunction without which his execution would have been accomplished.

The Court of Appeals acquired jurisdiction over the proceeding when the Attorney General of Texas filed notice of appeal on behalf of his clients. It found that to carry out the execution as scheduled "would affect the parties' rights pending the disposition of the appeal from the district-court order of injunction and would destroy the subject matter of the lawsuit." Slip opinion, at 3. The subject matter implicates the right of Graham and the corollary duty of the Board of Pardons and Paroles to grant and hold "a due course of law hearing on his post-conviction claim of innocence."

Contrary to assertions now made by Relators, the *civil* action designed to obtain the "historic 'fail-safe' remedy" of executive clemency does not impermissibly "invade" the exclusive post-conviction jurisdiction of this Court under Article 11.07, V.A.C.C.P., and does not improperly "interfere" with the order of the trial court setting a date for execution. In both instances the *criminal* judicial process has been "exhausted," *Herrera v. Collins,* supra, evidenced by the fact that Graham will surely be executed if the temporary injunction is set aside.

The Legislature of this State has long explicitly recognized and acknowledged that should a condemned person "be pardoned or his sentenced commuted by the Governor, no execution shall be had." Article 43.23, V.A.C.C.P. Due course of law certainly requires that such a condemned person desperately seeking executive clemency not be executed on the simple expediency that the State officials responsible for fairly considering his plea have refused to hear it.

For those reasons I join in denying the respective motions for leave to file.

MILLER, Judge, concurring.

Denying these applications so that the Court of Appeals can retain jurisdiction to determine if it has jurisdiction is an idea that, for the sake of comity to the civil side of our Texas docket, has merit. However I perceive a deeper problem within our system that is highlighted by this case. Wishing resolution of that problem, I join in the vote to deny the applications presently before us.

Applicant Graham's claim, in the Court of Appeals, highlights a distressing issue in criminal jurisprudence, *viz:* the execution of a person who may be innocent of the crime for which he was convicted and sentenced to death. The United States Supreme Court has recently addressed this issue and offers some guidance on applicant's claim, which I discuss below. My real concern in this case, and the reason for which I write, is to address whether applicant has a viable means by which to raise his claim and have it heard, notwithstanding the merits of his claim.

## BACKGROUND: HERRERA v. COLLINS

In *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court addressed the issue of whether a claim of actual innocence entitled a petitioner to federal habeas relief. Herrera urged in his petition that he was "actually innocent" of the murder for which he was sentenced to death, and that the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process of law forbade his execution. The Court concluded his claim did not entitle him to relief. The Court evaluated Herrera's claim in light of the previous ten years of proceedings in his case because the "evidence upon which petitioner's claim of innocence rests was not produced at his trial, but rather eight years later." *Id.* at p. ——, 113 S.Ct. at p. 859. The history of proceedings in Herrera's case is as follows.

Herrera was found guilty of the capital murder of a police officer and sentenced to death in January 1982. His conviction and sentence were affirmed on appeal to this

Court in *Herrera v. State*, 682 S.W.2d 313 (Tex.Crim.App.1984), and the Supreme Court denied certiorari in 1985. *See* 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). Herrera's application for state habeas corpus relief was denied by this Court in an unpublished opinion. *Ex parte Herrera*, No. 12,-848–02, (Tex.Crim.App., delivered August 2, 1985). Subsequently Herrera sought federal habeas relief on the basis of the identifications offered against him at trial. This relief was denied in *Herrera v. Collins*, 904 F.2d 944 (5th Cir.1990), and the Supreme Court again denied certiorari. *See* 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990). Herrera then filed a second habeas petition in state court raising *inter alia* a claim of "actual innocence" based on newly discovered evidence. He filed affidavits in support of this claim. The district court denied relief, and this Court affirmed that decision. *Ex parte Herrera*, 819 S.W.2d 528 (Tex.Crim.App. 1991).[1] The Supreme Court again denied certiorari. *Herrera v. Texas*, 502 U.S. ——, 112 S.Ct. 1074, 117 L.Ed.2d 279 (1992).

In February 1992, Herrera filed a second habeas petition in federal court alleging among other things that he was innocent of the murders for which he was convicted and hence executing him would violate the Eighth and Fourteenth Amendments. This claim was resolved against him by the High Court in *Herrera v. Collins*, the subject of this discussion. The Court noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." [2] —— U.S. at ——, 113 S.Ct. at 860. The rule ensures individuals are not imprisoned unconstitutionally; its purpose is not to correct errors of fact. *Id.* at ——, 113 S.Ct. at 860. Herrera had been afforded a fair trial in this cause, and thus his constitutional presumption of innocence disappeared. The Supreme Court stated that Texas' refusal to entertain Herrera's newly discovered evidence eight years after his conviction did not transgress a principle of fundamental fairness. *Id.* at ——, 113 S.Ct. at 867. Herrera's only forum for relief was the executive power of clemency.[3]

## CLEMENCY POWER IN TEXAS

Article 4, § 11 of the Texas Constitution vests the governor with the clemency power. Pursuant to that same Constitutional provision the Legislature created the Board of Pardons and Paroles to assist the governor in the exercise of this power. Section 11 provides in pertinent part:

(b) In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfei-

---

1. This Court filed and set Herrera's writ of habeas corpus on a "Penry issue." Herrera argued that the jury at his capital murder trial was precluded from considering evidence which counseled in favor of a sentence less than death. We held the trial court's findings and conclusions were supported by the record and, therefore, we denied relief.

2. Herrera's claim was not cognizable under state law. Although Texas provides an avenue for relief based on newly discovered evidence via Tex.R.App.Proc. 31(a)(1) (regarding motion for new trial), Herrera's claim was not filed within the 30 day time limit under this rule. A trial judge is without jurisdiction to entertain an out-of-time motion for new trial. *Beathard v. State*, 767 S.W.2d 423, 433 (Tex.Crim.App.1989).

3. The Court explained:

Federal habeas review of state convictions has traditionally been limited to claims of constitutional violations occurring in the course of the underlying state criminal proceedings. Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive. History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.

*Id.* at ——, 113 S.Ct. at 869.

tures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

The procedures for obtaining clemency are addressed under Chapter 143 in Title 37 of the Texas Administrative Code.

Section 143.2 provides for pardons based on innocence. The Board of Pardons and Paroles will "only consider" applications for recommendation to the governor for full pardon upon receipt of:

(1) a written unanimous recommendation of the current trial officials of the court of conviction; and/or

(2) a certified order or judgment of a court having jurisdiction accompanied by certified copy of the findings of fact (if any); and

(3) affidavits of witnesses upon which the finding of innocence is based.

Section 143.6 provides, however, that a full pardon will not be considered for an inmate while in prison, except when exceptional circumstances exist.[4] These two sections are most pertinent to Graham's claim for relief.[5]

Graham claims he is actually innocent of the crime for which he has been sentenced to death. Traditional routes of appellate review have thus far provided no relief. Consequently, the only apparent available avenue for him is to pursue a full pardon under § 143.2. Pursuant to this section, Graham may apply to the Board of Pardons and Paroles (hereinafter the Board) for a recommendation to the governor for full pardon, but as previously set out, the Board will *only*

*consider* such applications *upon the receipt* of two or three items: a written recommendation from the current trial officials of the convicting court, *and/or* a certified order accompanied by findings of fact, *and* affidavits from witnesses "upon which *the finding of innocence* is based." Query: how does Graham get access to these documents? From what are these documents generated? The language, "finding of innocence," suggests to me that a hearing on the claim of actual innocence must have been held at some time prior to the filing of the application seeking to institute the governor's clemency power. Hence, the real issue which needs to be addressed, in my mind at least, is one of procedural due process,[6] *viz:* does Texas provide a procedure by which a condemned person may institute consideration of his innocence claim by the Board of Pardons and Paroles?

## THE STATE'S CONTENTIONS

The State's response to Graham's efforts to obtain a hearing and recommendation for clemency from the Board of Pardons and Paroles is essentially that the Board has the authority to hear Graham's case, but in its discretion has decided not to have a hearing on his claim of actual innocence. This hearing that the State refers to is not the hearing which the clemency statutè seems to contemplate, and is not the hearing Graham so desperately needs at this point. From my reading of § 143.2, Graham may not even have his claim considered *in a hearing by the Board* until it receives the necessary documents listed in § 143.2. The State must demonstrate to the Court the import of the provisions in § 143.2 and that it (the State) provides Graham a vehicle by which he can

4. Presumably, a claim of actual innocence is an exceptional circumstance which would necessitate consideration of a full pardon for the imprisoned individual.

5. The clemency power also provides for relief other than a full pardon. Pursuant to § 143.41 the governor may grant one reprieve for 30 days without the recommendation of the board; upon the written and signed recommendation of the board the governor may grant a reprieve in any capital case at any time. The time period of the reprieve shall not exceed the board's recommen-

dation. Under § 143.42, a condemned felon may receive a reprieve of execution from the governor upon the board's recommendation. Since a reprieve is for a set period of time, the condemned felon may pursue relief via § 143.57 which provides for the commutation of a death sentence to life imprisonment upon the board's recommendation to the governor.

6. I do not question whether it is a violation of substantive due process to execute an innocent person.

obtain the documents required by that section. If there is no procedure in place by which Graham may satisfy the prerequisites to a hearing in § 143.2, then he may indeed be denied his process due. For the Board will "only consider" his application upon its receipt of the written materials specified in § 143.2. This of course assumes Graham can make the necessary initial showing of actual innocence to trigger the relief process.

## THE THRESHOLD SHOWING

In *Herrera v. Collins,* the Supreme Court discussed the effect on the justice system of entertaining claims of innocence. Triggering relief in this instance requires the claimant, Graham, places on him an extraordinarily high burden to meet. The Supreme Court required a high threshold showing of innocence because of the "very disruptive effect" that entertaining claims of actual innocence would have on the need for finality in capital cases and the enormous burden that having to retry cases with stale evidence would put on the State. *Herrera v. Collins,* —— U.S. at ——, 113 S.Ct. at 869.

The Supreme Court did not explicate the precise threshold showing, but only noted it was an extraordinarily high one and that Herrera's evidence of his innocence fell short of this threshold. His affidavits were made without benefit of cross-examination, largely consisted of hearsay, were produced eight years after his trial and after the death of the alleged perpetrator, lack any explanation for the eight year delay or why he pled guilty to another closely connected murder, contained inconsistencies, and did not overcome the State's proof at trial. We may use *Herrera v. Collins* as a guideline in Graham's case.

We at least know that Graham's evidence to support his claim of innocence must be more than that presented by Herrera, although each case will turn on its facts. Whether Graham has the necessary quantum of evidence to meet the threshold showing is not presently the issue before this Court, and I express no opinion on that. What is of utmost importance is that *if* Graham can meet the threshold showing (whatever that may be), the State of Texas provides a vehi-cle by which his evidence may be heard and a finding may be rendered regarding his claim of innocence. As I have expressed, if there is no vehicle then there is no due process for Graham.

## CONCLUSION

Whatever the merits of Graham's claim, his case has raised an important issue for Texas criminal jurisprudence, to-wit: does Texas protect a convicted felon's due process rights by providing a procedure by which he can invoke the clemency process? Until the State proves that it does, in a manner that complies with Supreme Court dictates, I concur in the Court's decision to deny the motions.

McCORMICK, Judge, dissenting.

I join the dissenting remarks of Judge Campbell, but write separately to disavow the comments of Judge Miller in his concurring opinion. The issue of whether our Texas procedure relating to clemency and the issues raised by *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) are not presently before this Court. The sole issue presented by the two petitions for mandamus is whether the order entered by the Third District Court of Appeals interferes with the exclusive felony post conviction authority of this Court and further whether it interferes with the lawful execution of this Court's judgment and mandate.

The issue of whether *any* court in Texas can exercise jurisdiction or authority over a death penalty was addressed in *State ex rel Wilson v. Briggs,* 171 Tex.Crim. 479, 351 S.W.2d 892 (1961):

"The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent is decisions, or disobey its mandates." 351 S.W.2d at 894.

It truly disturbs and distresses me that we, as the constitutionally empowered court to act in this issue, a majority will not defend our own domain.

The comity matter to which Judge Miller alludes was best addressed through Justice Pleasants of the Galveston Court of Civil Appeals:

> "It is necessary for the due and orderly administration of justice that the rule of comity which forbids one court from interfereing with the execution of the judgments of another should be strictly enforced. Any other rule would lead to unseemly and disorderly conflict between the courts and be productive of interminable confusion, and the results disastrous to the administration of justice." *Adoue v. Wettermark*, 22 Tex.Civ.App. 545, 55 S.W. 511.

Justice Pleasants knew well of what he spoke.

I dissent.

CAMPBELL, Judge, dissenting.

This is an original mandamus action filed on behalf of the State of Texas by the Attorney General and the District Attorney of Harris County (relators). Relators request this Court to issue a writ of mandamus directing the Third Court of Appeals (respondent) to vacate its order granting a temporary injunction in Cause No. 3–93–421–CV, *Texas Board of Pardons and Paroles, et al. v. Graham.* The order in question purports to grant death row inmate Gary Graham a stay of execution.

The question presented for this Court's determination is whether relators have demonstrated a basis for mandamus relief. I believe they have. Therefore, I dissent from the majority's refusal to issue the writ.

### *The Relevant Facts*

On October 28, 1981, in the 182nd District Court of Harris County, Gary Graham was convicted of capital murder and sentenced to death. *See* Tex.Penal Code § 19.03(a)(2). On June 13, 1984, we affirmed Graham's conviction. *Graham v. State*, 671 S.W.2d 529 (Tex.Cr.App.1984). Pursuant to this Court's mandate, the convicting court, on July 7, 1993, ordered Graham's execution to be carried out on or before sunrise on August 17, 1993.

On July 21, 1993, Graham filed a petition for declaratory, injunctive, and mandamus relief in the 299th District Court of Travis County. The defendants named in Graham's pleadings were the Texas Board of Pardons and Paroles ("the Board"), the members of the Board, and the Texas Department of Criminal Justice ("the Department"). Graham contended in his pleadings that the Board's refusal to grant him a full-blown, trial-like hearing on his application for executive clemency denied him due course of law as guaranteed by Article I, §§ 13 & 19 of the Texas Constitution.[1]

On August 9, 1993, the 299th District Court issued a temporary injunction directing the Board and the Department, in pertinent part, to grant Graham the requested hearing by August 10, 1993, or, failing that, to reschedule Graham's execution until a hearing was held or until the district court rendered a final judgment in the cause.

No hearing was held before the Board on Graham's clemency request on August 10, 1993. Nor was Graham's execution date rescheduled. Rather, on August 10, 1993, the Board, through its counsel of record, the Attorney General, gave notice of appeal, to the Third Court of Appeals, from the 299th District Court's order granting a temporary injunction. Because the Board is exempt from posting a cost bond, the notice of appeal automatically suspended the district court's order of injunction. *See* Tex.Civ.Prac. & Rem.Code § 6.001; Tex.R.App.Proc. 43(a).

On August 12, 1993, Graham filed a motion in the Third Court of Appeals requesting a stay of execution. On August 13, 1993, the court of appeals enjoined the Department from proceeding with Graham's execution until that court's final disposition of the appeal.

Relators now urge that the court of appeals acted beyond its jurisdiction in entering the complained-of order. They further urge

---

1. Graham's application for executive clemency was based on his claim of newly-discovered evidence. *See* Tex.Admin.Code § 143.2. The record reflects that the Board of Pardons and Paroles examined Graham's new evidence, which consisted entirely of affidavits, but the Board refused to recommend clemency to the Governor. *See* Tex. Const. art. IV, § 11.

that if Graham desires a stay of execution, his exclusive remedy is filing an application for writ of habeas corpus in the convicting court pursuant to Article 11.07 of the Texas Code of Criminal Procedure.

### Propriety of Mandamus Relief

Mandamus relief is available when a relator establishes that he has no other adequate legal remedy and that the action he seeks to compel is ministerial. *Buntion v. Harmon*, 827 S.W.2d 945, 947 (Tex.Cr.App.1992); *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex. Cr.App.1991). Here, relators have carried that burden.

Exclusive jurisdiction to grant a stay of execution or otherwise modify a valid death warrant lies with the convicting court and with this Court. *State ex rel. Wilson v. Briggs*, 171 Tex.Crim. 479, 351 S.W.2d 892 (1961). The 182nd District Court has had jurisdiction over the capital murder prosecution of Graham since the cause was originally filed more than a decade ago. On July 7, 1993, that court, acting pursuant to this Court's mandate, issued its *second* order for Graham's execution. The Third Court of Appeals' order granting Graham a stay of execution effectively emasculated the 182nd District Court's order, and this Court's mandate, directing that Graham's execution go forward. To allow the Third Court of Appeals' order to stand will only encourage what can fairly be described as constitutional chaos in the near future. "If it be the law in Texas that every district judge [and every court of appeals] must be satisfied before a death sentence may be carried out, and any district judge [or court of appeals] may prevent the execution of such a sentence . . ., then this Court is not a court of last resort in criminal matters in this state." *Id.* at 896.

An application for writ of habeas corpus, filed pursuant to Article 11.07, is the only legally cognizable means by which Graham may seek a stay of execution. *See* Tex. R.App.Proc. 233. I would summarily grant relators' petitions for leave to file and summarily vacate the order of the Third Court of Appeals staying the execution.

WHITE, J., joins.

MALONEY, Judge, dissenting.

I would grant the Board of Pardons and Paroles', et al., Motion for Leave to File its Petition for Writ of Prohibition and Mandamus, and I would grant a stay of execution pending further orders of this Court on the issues raised by the Attorney General in its petition, including those issues dealing with the requirement of a hearing before the Board of Pardons and Paroles on a request for clemency based upon a claim of actual innocence.

Because this Court denies the Attorney General of this State leave to file its petition on these issues, I respectfully dissent.