STATE of Texas ex rel. John B.
HOLMES, Jr., District Attorney
of Harris County, Relator,

v.

The HONORABLE COURT OF
APPEALS FOR the THIRD
DISTRICT, Respondent.

TEXAS BOARD OF PARDONS AND
PAROLES, et al., Relators,

v.

The HONORABLE COURT OF
APPEALS FOR the THIRD
DISTRICT, Respondent.

Nos. 71764, 71765.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 9, 1993.

Rehearing Denied June 8
and June 15, 1994.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann and Roe Wilson, Asst. Dist. Attys., Houston, for relator in No. 71764.

Dan Morales, Atty. Gen. of Texas, Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Atty. Gen., Michael P. Hodge, Ann Kraatz, William C. Zapalac and Robert Walt, Asst. Attys. Gen., Austin, for relators in No. 71765.

James C. Harrington, Austin, for real party in interest Gary Graham.

### ORDER

PER CURIAM.

These are original actions filed on behalf of the State of Texas by the Attorney General and the District Attorney of Harris County. Relators seek to challenge an order granting a temporary injunction by the Court of Ap-

peals for the Third District in Cause No. 3-93-421-CV, styled The Texas Board of Pardons and Paroles, et al., v. Gary Graham. The order purported to grant death row inmate Gary Graham a stay of his execution which was scheduled to take place on August 17, 1993.

Relator Holmes contends that Respondent's order is unlawful and void ab initio because: (1) the order illegally vacates a previously existing order of a court of equal and competent jurisdiction thereby usurping that court's original jurisdictional authority over Graham's case; and (2) the order violates the original jurisdiction of this Court under Art. V, Sec. 5 of the Texas Constitution. On behalf of the Texas Board of Pardons and Paroles, Respondent Morales urges: (1) the Court of Appeals had no jurisdiction to issue an injunction which is in effect a stay of Graham's execution; (2) the Court of Appeals was procedurally barred from granting an injunction which was in effect a stay of Graham's execution; (3) Graham has failed to present his complaint to the trial court by means of the exclusive post conviction habeas corpus remedy set forth within Art. 11.07, V.A.C.C.P.; and (4) this Court should assume original habeas corpus jurisdiction over this case and respond to the issue raised by Graham.

On August 16, 1993, this Court denied leave to file these actions. We now reconsider such denial on our own motion and grant leave to file both actions.[1] See Tex.R.App. Pro. Rule 211(c).

Due to the similarity of the contentions presented by Relator Holmes and Relator Morales, the causes will be consolidated for submission.

The causes will be submitted on Wednesday, December 1, 1993, at 9:00 a.m. Relator Holmes and Relator Morales will be allowed a total of thirty (30) minutes for oral argument. Respondent will be allowed thirty (30) minutes for oral argument. Any additional briefs by Relators shall be filed on or before November 19, 1993. Any brief on behalf of Respondent shall be filed on or before November 29, 1993. In order to protect our

1. We decline to grant leave to file Relator Morales' second argument concerning an alleged    procedural bar.

jurisdiction to consider these actions, we direct all proceedings in Cause No. 3–93–421–CV styled Texas Board of Pardons and Paroles, et al, v. Gary Graham, be stayed pending further orders by this Court.

IT IS SO ORDERED.

CLINTON, Judge, dissenting to order.

As the majority acknowledges, more than twelve weeks ago the Court denied leave to file these applications for good and sufficient reasons. With apologies to Sir Walter Scott, my dissenting view builds on his base:

O, what a tangled web we weave,
When now we practice to achieve
That which once we did perceive
Too fanciful for us to grieve.

King Solomon described this whole contretemps well: "Pride goeth before destruction, and a haughty spirit before a fall." Proverbs 16:18.

MILLER, Judge, dissenting to the order filing and setting relators' mandamus actions.

Once again we are poised on the brink of a constitutional precipice.

Only two months ago, this Court denied the Relators' motions to file these mandamus actions in *State of Texas ex rel. John B. Holmes, Jr. and Texas Board of Pardons and Paroles, Et Al. v. The Honorable Court of Appeals for the Third District,* 860 S.W.2d 873 (Tex.Crim.App.1993). I concurred with this Court's disposition of the request for mandamus filed by the State and expressed my views that the clemency process in the State of Texas is seriously flawed for not providing an appropriate vehicle by which a

convicted felon can invoke such process. *Id.,* (Miller, J. concurring).

Today the majority has decided to reconsider, on its own motion, the question of whether a court of appeals has the authority to issue an injunction to prevent the rendering moot of a civil case pending in its court. As I believe that this decision could lead to grave and far-reaching constitutional and jurisdictional consequences, I must dissent.

The majority's action today will return us to the jurisdictional entanglement which we so deftly avoided two months ago. The Relators have brought this mandamus action to the Court of Criminal Appeals. Graham could very well file a similar action in the Texas Supreme Court. We are faced with the potential for the anomalous situation of ultimately having two conflicting orders from the two highest courts in the State—one order from this Court ordering that the execution take place and an order from the Supreme Court enjoining such execution. The legal quagmire which could arise from such a conflict is unprecedented in this state.[1]

The Third Court of Appeals has not ruled on the question of jurisdiction over the particular matters at issue in this case. It was, in fact, the State that initially gave notice of appeal to the Third Court of Appeals and invoked its jurisdiction. However, the only action the court of appeals has taken so far is to issue an injunction requested by Graham in order to preserve the subject matter of the lawsuit pending consideration of the State's challenge to the trial court's action. It is the function of an intermediate court to make determinations about the propriety of a trial

---

1. My concern for the constitutional and jurisdictional issues at stake here should not be interpreted as expressing any opinion on the merits of Graham's underlying arguments. Indeed, it is entirely possible that the Court of Appeals may never even reach these arguments as it may find that this Court is the proper venue for Graham's complaint as Graham does have a remedy under criminal statutes by which to pursue his claim of actual innocence, *viz:* filing a post conviction application for writ of habeas corpus pursuant to Art. 11.07, V.A.C.C.P., stating that he has been denied due process of law.

As I explained in my concurrence to this court's initial ruling in this case, *State of Texas ex rel. John B. Holmes, Jr. and Texas Board of Par-*

*dons and Paroles, Et Al. v. The Honorable Court of Appeals for the Third District,* 860 S.W.2d 873 (Tex.Crim.App.1993), Graham's claim for relief under Art. 11.07 would be based on the procedures for obtaining clemency outlined in Chapter 143 in Title 37 of the Texas Administrative Code. Graham's only apparent available avenue of relief is to pursue a full pardon under Section 143.2, which provides for pardons based on innocence. The Board of Pardons and Paroles will "only consider" applications for recommendation to the governor for full pardon upon receipt of:

(1) a written unanimous recommendation of the current trial officials of the court of conviction; *and/or*

court's actions and thus the Court of Appeals certainly has jurisdiction to review the trial court's findings, as the State has requested it to do. *See* TEX. CONST. Article 5, § 6; TEX.GOV'T CODE § 22.220 (Vernon 1988).

In fact, it may very well be that the Court of Appeals will hold that the Court of Criminal Appeals has the proper jurisdiction over the issues raised by Graham in the trial court and dismiss his action for want of jurisdiction. *See State ex rel. Wilson v. Briggs*, 171 Tex.Crim. 479, 351 S.W.2d 892 (1961). Alternatively, the appellate court may hold that the trial court improperly granted the injunction because Graham's proper avenue for relief is an Art. 11.07 writ.[2] Under either scenario, the Court of Appeals would actually

> (2) a certified order or judgment of a court having jurisdiction accompanied by certified copy of the findings of fact (if any); *and*
> (3) affidavits of witnesses upon which the finding of innocence is based.
>
> Consequently, pursuant to this section, Graham may apply to the Board of Pardons and Paroles (hereinafter the Board) for a recommendation to the governor for full pardon. But as previously set out, the Board will *only consider* such applications *upon the receipt* of two or three of the above-listed items. Query: how does Graham get access to these documents? From what are these documents generated? The language, "finding of innocence," suggests to me that a hearing on the claim of actual innocence must have been held at some time prior to the filing of the application seeking to institute the governor's clemency power. However, when these claims of actual innocence are raised after the trial court has lost plenary jurisdiction over the case, there is a necessity of a recommendation of the trial court, yet there is no statutory provision by which an applicant can obtain the hearing before the trial court.
>
> If there is no procedure in place by which Graham may satisfy the prerequisites to a hearing in § 143.2, then he may indeed be denied his process due for the Board will "only consider" his application for a pardon upon its receipt of the written materials specified in § 143.2. This of course assumes Graham can make the necessary initial showing of actual innocence to trigger the relief process required by *Herrera v. Collins*, —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Whether Graham has the necessary quantum of evidence to meet the threshold showing is not presently the issue before this Court, and I express no opinion on that. What is of utmost importance is that *if* Graham can meet the threshold showing (whatever that may be), the State of Texas provide a vehicle by which his evidence may be heard and a finding may be rendered regarding his claim of innocence.

be *affirming* the jurisdiction of this Court over the issues raised by Graham.

By granting leave to file this mandamus action, the majority has unduly exacerbated the jurisdictional conundrum developing in this case, hindered the resolution of these issues in a constitutionally acceptable manner, and threatened the careful balance of the appellate court system in this state. At best, the decision to hear the mandamus actions is premature. At worst, it could ultimately result in a decision from the Texas Supreme Court holding that *it* has jurisdiction over this matter and a decision by the Texas Court of Criminal Appeals holding that *it* has the proper jurisdiction. Shall we then mandamus each other?

2. If the state has not provided a vehicle by which a person can obtain the hearing required by § 143.2, Graham perhaps can seek relief for his claim of denial of due process via an Art. 11.07 writ. The possible scenario would be that once he has filed that writ, claiming a lack of due process, it would be incumbent upon the trial court to determine whether he has made the threshold *Herrera* showing. If the trial court determines that he has met this threshold, then it could then consider his claims in a hearing and forward its findings of fact and conclusions of law to this Court pursuant to Art. 11.07, § 2(d). Alternatively, the trial court could chose not to hold a hearing [as per § 2(c) ]. This Court would review the trial court's decision under § 3 of Art. 11.07. If it can be shown that the applicant met the *Herrera* threshold and the trial court did not hold a hearing, then this Court could order that the trial court hold a hearing and make findings of facts and conclusions of law regarding applicant's claims.

Once the trial court has held such hearing and made its judgment and findings of facts, the applicant would then have in his possession the necessary court documentation required by § 143.2, which he can then forward to the Board of Pardons and Paroles for consideration of his application for a full pardon. This avenue, therefore, would allow a convicted felon an opportunity to obtain this hearing, without which he might have no means by which to receive a pardon.

I use this hypothetical example to show that there are many possible resolutions to the problem at hand that will not result in a constitutional confrontation between courts. As stated above, it is also possible that the court of appeals will rule that it is only this Court which has jurisdiction over any issue related to Graham's punishment. In any event, we should choose the path of prudence and await the ruling of the court of appeals rather than hastily set into motion events which may become our undoing.

As the Court of Appeals has acted within its jurisdictional authority, there is no need for further consideration of Relators' motions for mandamus. Because the majority has held otherwise and has embarked on a course which could lead to an unnecessary jurisdictional battle, I dissent.

OVERSTREET, Judge, dissenting to order.

On August 16, 1993 one day before Gary Graham's scheduled date with the executioner this Court denied leave to file these actions. As a consequence of our action or lack thereof, the matters to be decided were left at the door of the Third Court of Appeals sitting at Austin. Nearly three months later, for whatever reasons, a majority of this court wants to take back that which it refused using Tex.R.App.Pro. Rule 211(c) as the vehicle. I am not inclined to go along for the ride and voice by dissent with strong disfavor.