IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-50438
_____


PEDRO SOLIS SOSA,

                                        Petitioner-Appellant,

                        versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

                                        Respondent-Appellee.
_____

Appeal from the United States District Court
for the Western District of Texas
(95-CV-586)
_____

September 27, 1999

Before JOLLY, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

I

On November 4, 1983, two men kidnaped Deputy Sheriff Ollie Childress, used his patrol car in a Texas bank robbery, and later shot him as he lay in the trunk. The police first arrested Leroy Sosa ("Leroy") and then arrested his uncle, Pedro Sosa ("Sosa"), along with Sosa's wife who happened to be with Sosa at the time of the arrest. Sosa later confessed to the police. At trial, Leroy

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

testified that Sosa had been the one who shot Officer Childress. The jury convicted Sosa and sentenced him to death.

In May 1993, Sosa filed a state habeas corpus petition followed by two supplemental petitions that together made the following claims:

> (1) Denial of defense counsel's pleas for assistance deprived Sosa of his right to due process and effective assistance of counsel.
>
> (2) The jury selection procedures used in Sosa's indictment and trial were unconstitutional.
>
> (3) The court's preclusion of consideration of certain mitigating factors during sentencing was unconstitutional.
>
> (4) The police did not give Sosa an adequate _Miranda_ warning and coerced his confession by threatening him and his wife.
>
> (5) The state did not disclose that witnesses had been hypnotized, neglected procedural safeguards when hypnotizing them, such as using an independent expert and conducting the hypnosis without anyone else in the room, and withheld notes and videos from those hypnosis sessions.
>
> (6) The state withheld exculpatory evidence, including:
>
> > (a) An FBI report containing witness descriptions of the two bank robbers inconsistent with the state's allegations as to who was in charge of the robbery.
> >
> > (b) Polygraph test results from Sosa's interview with police several weeks after his arrest.
> >
> > (c) Analysis of sixty-one fingerprints, three palm prints, and one impression from the crime scene, none of which matched Sosa's prints.
> >
> > (d) The existence of another set of suspects, Earl Hunter and Gilbert Garza, and information about them, including a tip that Hunter had planned the robbery, photographs of the two men, and hair samples collected at a hotel where police believe Garza had stayed.

2

      (e) The state's presentence report on Leroy discussing his drug and alcohol addictions.

(7) Misrepresentations by a juror during <u>voir</u> <u>dire</u> denied Sosa a fair trial and deprived him effective use of his peremptory challenges.

(8) The court's refusal to allow cross-examination of a confidential informant was unconstitutional.

(9) The court's refusal to order production of witness statements, FBI reports, and photos shown to witnesses, and to order disclosure of potentially useful information, such as bad acts by state witnesses and the identity of the confidential informant, were unconstitutional.

(10) The sentencing instructions misled the jury.

(11) Texas' aggravating circumstance criteria were unconstitutionally vague.

(12) Allowing consideration of Sosa's prior unadjudicated offenses was unconstitutional.

(13) The lack of instruction on consideration of unadjudicated offenses gave the jury an unconstitutional amount of discretion.

(14) Since rights under the Texas Constitution were broader than those of the U.S. Constitution, the court would need to evaluate each habeas claim under both state and federal law.

(15) The police obtained false testimony from Leroy by conditioning his plea on it.

(16) The court had undisclosed <u>ex</u> <u>parte</u> communications with a juror, Rosalio Orta.

(17) The state improperly contacted Orta concerning these <u>ex</u> <u>parte</u> communications.

(18) The cumulative impact of these errors mandated habeas relief.

The Texas trial court summarily denied these claims, but the Texas Court of Criminal Appeals remanded the petition for an evidentiary hearing. Sosa then filed several discovery motions and requested

3

subpoenas for members of the FBI who had investigated the case.  In the fall of 1993, however, the state court denied the motions, quashed the subpoenas, and went ahead with the hearing, after which it denied the habeas petition.  The court of criminal appeals affirmed in the spring of 1995.

That fall, Sosa filed a discovery motion in federal district court.  He followed that with a federal habeas corpus petition in November, a first amended petition in December, and another discovery request in the spring of 1996.

In August 1997, the district court granted Sosa discovery of nearly everything requested:

> (1) Documents related to witnesses hypnotized during the investigation.
>
> (2) Depositions of those witnesses.
>
> (3) Depositions of people involved in the investigation.
>
> (4) Fingerprint evidence.
>
> (5) Documents related to other suspects identified by the authorities.
>
> (6) Witness descriptions of the bank robbers.
>
> (7) Documents related to the voluntariness of Sosa's post-arrest statement.

Sosa included seven volumes of these materials with his second amended federal petition for habeas relief.  These materials have never been submitted to a state court.

In his second amended petition, Sosa pared his list of claims down to the following:

4

(1)   Denial of defense counsel's pleas for assistance deprived Sosa of his right to due process and effective assistance of counsel.

(2)   The police did not give Sosa an adequate <u>Miranda</u> warning and coerced his confession by threatening him and his wife.

(3)   The state withheld exculpatory evidence, including:

(a)   Inconsistencies between witness testimony at trial and statements made to police the day of the robbery, including who was in charge of the robbery and the behavior of the two robbers.

(b)   The existence of five other sets of suspects investigated by the police, the extent of investigations into each of them, and the information collected during those investigations, including molds of tires, a tip from a confidential informant, physical descriptions of the suspects and their vehicles, outstanding arrest warrants, hair samples, photographs, and witness interviews.

(c)   The absence of any prints at the crime scene identifying Sosa despite analysis of sixty-one fingerprints, three palm prints, and one impression.

(d)   Polygraph results from an interview of Irene Villarreal and Bruno Escamilla. The investigators had suspected that Villarreal's car had been used by the robbers. Villarreal told the investigators that Escamilla had her car the day of the robbery. When asked whether she had any further information about the robbery, she answered "no," but the polygraph indicated she was lying. Similar results also suggested that Escamilla was lying when he told investigators that he had not had possession of the car that day.

(e)   That witnesses had been hypnotized, that procedural safeguards for hypnosis, such as using an independent expert, conducting the hypnosis without anyone else in the room, and conducting the hypnosis in a non-suggestive manner, had not been followed; that one of the hypnotized witnesses had remembered several license plate numbers on a suspect's car that

5

did not match Sosa's plate numbers; and notes and videos from those hypnosis sessions.

    (f)   Information about Leroy's drug and alcohol addictions.

(4)   The trial court's refusal to order disclosure of witness statements and FBI reports was unconstitutional.

(5)   The jury selection procedures used in Sosa's indictment and trial were unconstitutional.

(6)   The cumulative impact of these errors mandated habeas relief under the Fourteenth Amendment.

Each of the claims above arose from the claims that Sosa had presented to the state courts. The evidence he obtained after the federal district court granted him discovery, however, augmented several of them, specifically, federal claims (2), (3), and (4).

The newly-available deposition testimony supports claim (2), that the police coerced Sosa's confession by arresting his wife and holding her in custody for two days solely to obtain that confession. First, Sosa points to an officer's deposition testimony admitting that the police "considered" arresting Sosa's wife "in order to assist in obtaining [his] confession." Other deposition testimony reveals that the police had Sosa's wife under surveillance for "quite a period of time" prior to her arrest and raises doubts about whether the officers believed she had committed any crime when they arrested her.

Claims (3) and (4), the failure to disclose claims, are stronger with the addition of FBI reports containing witness statements, polygraph results, information about the hypnosis sessions, and a report on one such session. First, the statements

in the FBI reports are inconsistent, both with each other and with testimony at trial. Second, some FBI reports provide information on other suspects. Third, polygraph results from the interviews with Villarreal and Escamilla raise questions about their credibility concerning the location of Villarreal's car the day of the robbery. Fourth, witness deposition testimony about the hypnosis sessions raises questions about the procedures used. Fifth, an FBI report from one of those sessions reveals that a witness remembered several possible license plate numbers on a car possibly used in the robbery.

In January 1998, Sosa filed a set of pro se motions with the district court raising additional issues, including several asking for the suppression of evidence and one motion for acquittal, retrial, or an evidentiary hearing because Leroy's lawyer had coached Leroy's testimony during Sosa's trial.

In March 1999, the district court denied Sosa's habeas petition, citing lack of exhaustion of state remedies. The court dismissed the case without prejudice in order to give Texas state court the opportunity to review the additional documentary evidence and Sosa's pro se motion. The court order also removed the stay of execution, which a Texas court rescheduled for October 21, 1999. Sosa then filed, and the district court denied, both a motion to alter and amend the judgment and a request for a CPC. Sosa now seeks a CPC from this court and another stay of execution. The appellee, Texas Department of Criminal Justice, argues that Sosa has not shown abuse of discretion by the district court in

7

dismissing the case. In short, the state's attorneys have not objected to the district court's conclusion that the state courts should have another look at Sosa's claims.

## II

## A

We must issue a CPC before we can hear Sosa's appeal to the district court's denial of habeas relief. 28 U.S.C. § 2253; Sterling v. Scott, 57 F.3d 451, 453 (5th Cir. 1995).[1] Determining whether to issue a CPC is a two-step inquiry. First, a petitioner must demonstrate exhaustion of remedies in state court. Sterling, 57 F.3d at 453. Second, if, and only if we find all claims presented have been exhausted, there must be substantial showing of

---

[1]This is not a review of the district court's denial of the CPC request. Such an order is not appealable. Greenwalt v. Stewart, 105 F.3d 1268, 1272 (9th Cir. 1997). See also Robinson v. Johnson, 151 F.3d 256, 258-60 (5th Cir.)(after district court denial of CPC, court of appeals making own determination as to whether one was warranted rather than reviewing the district court order), cert. denied 119 S.Ct. 1578 (1999); Tucker v. Johnson, 115 F.3d 276, 281 (5th Cir. 1997)(same); Murphy v. Johnson, 110 F.3d 10, 11 (5th Cir. 1997)(same); Sterling, 57 F.3d at 453 (same); Sawyers v. Collins, 986 F.2d 1493, 1497 (5th Cir. 1993)(same). Accordingly, we must make our own determination as to whether a CPC is warranted. Since this is not a review of the district court decision, therefore, we need not decide whether Sosa's January 1998 pro se motions constitute additional claims for habeas relief because he did not file them with us.

The certificate at issue is one of probable cause, not one of appealability. Prior to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214, 1217-18 (1996), a CPC was required. But that Act changed the term to a certificate of appealability ("COA"). The AEDPA does not apply to Sosa's claims for relief, however, because he filed his original federal habeas corpus petition on November 17, 1995, before the AEDPA's active date on April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 324-26, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The distinction between a CPC and a COA does not matter in this case because the standard for obtaining either is the same. Murphy v. Johnson, 110 F.3d 10, 11 (5th Cir. 1997).

8

denial of a federal right. <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)(<u>cited</u> <u>with</u> <u>approval</u> <u>in</u> <u>Sterling</u>, 57 F.3d at 453).

The central issue before us, obviously, is whether Sosa has exhausted his state remedies. Issuing a CPC would contradict the district court's holding. We would, therefore, need to determine whether the district court's holding on exhaustion was an abuse of discretion. <u>Brewer v. Johnson</u>, 139 F.3d 491, 492 (5th Cir. 1995). If it were, we would remand the case to the district court for a hearing on the merits.

It seems clear that Sosa has not demonstrated exhaustion of his claims, and that we should deny his CPC request. "To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claims to the state courts." <u>Vela v. Estelle</u>, 708 F.2d 954, 958 (5th Cir. 1983)(<u>cited</u> <u>in</u> <u>Sones v. Hargett</u>, 61 F.3d 410, 414-15 (5th Cir. 1995)). Petitioners fail to exhaust their state remedies when they resort to material evidentiary support in federal court that was not presented in state court. <u>Graham v. Johnson</u>, 94 F.3d 958, 968 (5th Cir. 1996). <u>See</u> <u>also</u> <u>Knox v. Butler</u>, 884 F.2d 849, 852 n.7 (5th Cir. 1989)(refusing to consider census data, even though judicial notice was available, since notice sought for the first time in federal court); <u>Joyner v. King</u>, 786 F.2d 1317, 1320 (5th Cir. 1986)(holding that "new factual allegations in support of a previously asserted legal theory" must be presented in state court); <u>Rodriguez v. McKaskle</u>, 724 F.2d 463, 466 (5th Cir. 1984)(holding ineffective

assistance of counsel claim not exhausted due to new facts); Brown
v. Estelle, 701 F.2d 494, 495-96 (5th Cir. 1983)(holding that
reliance on three additional affidavits in federal court rendered
claims unexhausted); Burns v. Estelle, 695 F.2d 847, 849-50 (5th
Cir. 1983)(holding claims unexhausted because factual bases of
claim not presented in state court).  The case most analogous to
this one is Graham, 94 F.3d 958.  In that death penalty case,[2] the
petitioner relied on nine pieces of evidence in federal court that
he had not presented in state court.  Id. at 959, 965.  These were
primarily affidavits and various police reports.  Id.  The court
held that this new evidence rendered the claims for habeas relief
unexhausted.  Id. at 969.  Sosa has presented us with seven full
volumes containing ninety-four exhibits, most of which are new.
Though his present claims largely may rest on the same
constitutional ground as when earlier presented to the state
courts, Sosa has fundamentally altered them by augmenting them to
this degree.

The cases Sosa cites for the proposition that adding
supporting evidence does not render a claim unexhausted are
distinguishable.  In Vasquez v. Hillery, 474 U.S. 254, 259-60, 106
S.Ct. 617, 88 L.Ed.2d 598 (1986), the new evidence was merely
statistical analysis that "added nothing to the case that this

---

[2]Sosa points to two cases standing for the proposition that
the standard for a CPC is more lenient in capital cases, Barefoot,
463 U.S. at 893, and Buxton v. Collins, 925 F.2d 816, 819 (5th Cir.
1991).   But as both cases also explain, "the severity of the
penalty does not in itself suffice to warrant the automatic issuing
of a certificate."  Barefoot, 463 U.S. at 893; Buxton, 925 F.2d at
819.

Court has not considered intrinsic to the consideration of any grand jury discrimination claim." The district court, moreover, had specifically requested the evidence to "supplement and clarify" the record. Id. at 257. In Miller v. Estelle, 677 F.2d 1080, 1084 (5th Cir. 1982), the new evidence was cumulative, and "differed only in number, not in kind" from the evidence presented in the state habeas proceedings. Finally, in Walker v. Lockhart, 763 F.2d 942, 955 n.26 (8th Cir. 1985), the court took the position that exhaustion was not an issue because the state had waived it. None of these circumstances is present here.

It is therefore clear that Sosa does not meet the exhaustion prerequisite to issuance of a CPC.

B

Sosa could evade the exhaustion requirement if returning to state court would be futile, but it appears that Sosa still has a remedy under Texas law. The Texas Code of Criminal Procedure, Article 11.071, Section 5, provides:

> Sec. 5.(a)    If an initial application for a writ of habeas corpus is untimely or if a subsequent application is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent or untimely initial application unless the application contains sufficient specific facts establishing that:
>              (1)  the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable.

11

There is a dearth of Texas case law analyzing this new writ-abuse statute. It seems likely, however, that a Texas court would consider these claims based on the new evidence since a Texas court had originally refused to order its disclosure. The court of criminal appeals, moreover, has shown flexibility with the statute. See Ex parte Ramos, 977 S.W.2d 616 (Tex. Crim. App. 1998)(en banc)(refusing to read the restrictions literally in the face of a good-faith application for habeas relief). Regardless, a Texas court ought to determine whether Texas law imposes a procedural bar in this situation. We cannot say that it would be "futile" for Sosa to bring his habeas claims in state court for a hearing on the merits.

                              III

With respect to Sosa's request for a stay of execution, because Sosa's habeas claims should be heard in Texas state court, that forum should be the one to grant his stay of execution.

                              IV

Because there is no exhaustion due to Sosa's new evidence and no clear futility in having him take his claims to state court, the district court did not abuse its discretion in dismissing the federal habeas petition without prejudice for failure to exhaust state remedies. The state court is the appropriate forum for these claims and the one to stay his execution. For these reasons, Sosa's requests for a CPC and a stay of execution are

                              12

D E N I E D.[3]

---

[3]The appellant's motion for leave to file in excess pages the motion for stay of execution scheduled for October 21, 1999, is GRANTED.